WEBB ACADEMY *v.* CITY OF GRAND RAPIDS.

1. TAXATION—EXEMPTIONS—EDUCATIONAL INSTITUTIONS — USE OF PROPERTY.

Exemption from taxation under the statute (1 Comp. Laws 1915, § 4001) does not follow from the mere fact of ownership of land by an educational institution, incorporated under 2 Comp. Laws 1915, §§ 10642-10657, but is based on, and only applies to, ownership combined with occupation for the purposes of its incorporation.

2. SAME—EVIDENCE—QUESTION OF LAW.

Whether any or all of the real estate such institutions may own is, in contemplation of the statute, so occupied, is mainly a question of law, where the facts are substantially undisputed.

3. SAME—LIMITING AMOUNT OF LAND USED FOR EDUCATIONAL PURPOSES—STATUTE.

There is no authority in the statute authorizing the assessors to find, or put a specific limit on, the amount of real estate belonging to incorporated educational and scientific

As to whether a school which is also used for residential purposes by proprietor and family, or other persons connected with the school "exclusively" used for school purposes, within statutory exemption, see note, 21 L. R. A. (N. S.) 171.

On exemption of property used for a private school, see note in 21 L. R. A. (N. S.) 164.

institutions entitled to exemption, provided the same is in fact and good faith solely occupied and appropriately used for the purposes for which they were incorporated.

4. SAME—EXEMPTIONS—EDUCATIONAL PURPOSES—OCCASIONAL USE FOR OTHER PURPOSES—EFFECT.

An educational institution, exempt from taxation under the statute, would not lose its exemption because part of the building used for school purposes was incidentally used by its president and general manager as a residence, a small part of the less than two acres of ground was cultivated as a family garden, and occasionally parties have paid for storage of their automobiles in the barn upon the premises.

5. SAME—BURDEN OF PROOF.

The burden of proof is upon the party claiming exemption.

6. SAME—CONSTRUCTION OF STATUTES—INTENT.

While statutes exempting from taxation are to be strictly construed, they should not be so construed as to defeat the legislative intent.

7. SAME.

The rule for strict construction is not so rigidly adhered to in construing exemptions for educational purposes as those applicable to more strictly commercial or business enterprises.

8. SAME—PARTIAL EXEMPTIONS — ILLEGAL ASSESSMENT — INJUNCTION.

Where the facts are substantially undisputed, and it is conceded by defendants that plaintiff is an educational institution entitled to some exemption under the statute, the action of the assessors in spreading the tax over the whole premises as a unit and deducting therefrom the amount allowed as exemption is illegal and void, there being no authority in law for a partial exemption, and the collection of such tax was properly restrained by the court below.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J. Submitted October 14, 1919. (Docket No. 38.) Decided April 10, 1920.

Bill by the Webb Academy against the city of Grand

Rapids and others to set aside an assessment for taxes. From a decree for plaintiff, defendants appeal. Affirmed.

*Shelby B. Schurtz,* for plaintiff.

*Ganson Taggart,* for defendants.

STEERE, J.   Plaintiff is an educational institution located in the city of Grand Rapids, incorporated as the "Webb Academy" in 1912 under Act No. 39, Laws 1855 (2 Comp. Laws 1915, §§ 10642-10657). Its capital stock is given in its articles of association as $10,-000, its stated corporate character and purpose as an academy and institution of learning being "to prepare students for colleges and universities; to furnish regular and special courses in the academic grades; and such purposes as may be incident to academic educational institutions."

Since the time of its incorporation the academy has owned and occupied for the purpose for which it was incorporated a property known as the "Old Fisher Homestead," located in a residential district over a mile east of the central business portion of the city. The property lies on Eastern avenue, is less than two acres in area (substantially one and eight-tenths), is somewhat irregular in shape with a large brick building centrally located upon it and a barn at the rear. It was formerly owned and occupied by a man of means named Fisher, who owned much property in the locality and selected it as a site for his home, building upon it a brick residence of ample proportions and otherwise appropriately improving the premises for that purpose. After his death it became tenemental property and so continued until shortly before it was acquired by plaintiff for its educational purposes. It is described as an attractive spot ornamented with shrubbery, vines, a winding driveway, etc., with a number of large oaks, elms and other trees upon the

grounds, or "campus." The building has been renovated, equipped and adapted to plaintiff's work, being supplied with a general equipment for school purposes, such as blackboards, maps, globes, tables, desks and other school furniture. It contains various adequate rooms used for office, library, recitations, etc., a session room 35x16 feet, seating 35 pupils, a hall 11 feet wide of the same length, etc.

The premises are stated to be worth upwards of $12,000. They were exempted from taxation by the assessing authorities after plaintiff acquired them until 1918, in which year an assessment appears on the roll against them, stated in defendants' answer to be as follows:

"Fisher's Subdivision of part of lot 12, block 3, Fisher's Second Addition.

"Webb Academy.—Lot 32 (except the north 280.69 feet of the east 100 feet).

"Valuation of real estate in dollars, $6,700.

"The cash value as fixed by the board of review—value of real estate in dollars, $4,000.

"The said assessment is spread over the whole premises as a unit."

It is stated in the opinion of the trial judge that a blue print attached to defendants' answer giving what purports to have been done by the board of assessors shows in part as follows:

"EXEMPTIONS.

| | |
|---|---:|
| 150 feet frontage on Eastern avenue, at $25 per ft.. | $3,750 |
| .47 of an acre in rear, at $1,500 per acre.......... | 700 |
| All buildings ................................... | 2,550 |
| Total exemptions ........................... | $7,000 |

ASSESSMENT.

| | |
|---|---:|
| 108.68 ft. frontage on Eastern ave., at $25 per ft.. | $2,700 |
| 15 ft. frontage on Hollister ave., at $20 per ft.... | 300 |
| 2/3 of an acre in rear, at $1,500 per acre........ | 1,000 |
| Total assessment ........................... | $4,000" |

And also stated in the opinion that counsel for defendants said in argument—

"that this exemption was made for the reason that it was acknowledged by the defendants that the plaintiff was engaged in conducting its school or academy in full compliance with the purpose stated in its articles of incorporation, and that the exemption of $7,000 was a just and fair exemption to plaintiff from taxation under the circumstances of the case."

The following recitals in the decree granting permanent injunction against enforcement of such assessment are apparently undisputed and clearly established by the evidence.

"Plaintiff is an educational and scientific institution, duly incorporated * * * subject to visitation by the school authorities of the State, pursuant to law. The stock is all held by instructors in the school (with the exception of a single share) ; these instructors devote practically all their time to teaching in the school. No dividends have ever been declared on the stock.

"That the work the academy has done and is doing constitutes it a general educational institution, under the laws of the State. This work is of the same character as that done in the public schools, and in preparatory academies. Plaintiff is not a business college or other like special school.

"That plaintiff owns in fee simple the following described lands and premises located in said city of Grand Rapids, to wit: Lot 32 (except the north 280.68 feet of the east 100 feet) of Fisher's subdivision of part of lot 12, block 3, Fisher's Second Addition to said city, according to the recorded plat thereof, with the buildings and other property thereon. The same is all embraced within one inclosure, and is a single consecutive piece, less in extent than the original platted lot.

"That such real estate was purchased in the spring of 1912, solely for school purposes, and has ever since its said purchase been so used by plaintiff (an educational and scientific institution incorporated as aforesaid under the laws of this State)."

Defendants' contention as stated in counsel's brief is:

"*First.* That exemption from taxation under the statute does not automatically and of necessity follow ownership of real estate by a school but only to such part thereof as is occupied solely for school purposes.

"*Second.* That the amount of land entitled to exemption is by law committed to the assessors and on appeal, to the city commission as a board of review, and their finding is binding on the court, in the absence of fraud or clear abuse of such discretion."

The statutory provision under which exemption of these premises was recognized by defendants in previous years and is now claimed by plaintiff is, so far as applicable to this controversy, as follows:

"The following real property shall be exempt from taxation:   *   *   *

"*Fourth.* Such real estate as shall be owned and occupied by library, benevolent, charitable, educational and scientific institutions incorporated under the laws of this State, with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated."   *   *   *
1 Comp. Laws 1915, § 4001.

We find no occasion to question the substance of defendants' first proposition. Exemption does not follow from the mere fact of ownership by one of the institutions named, but is based on and only applies to ownership combined with occupation for the purposes of its incorporation.

On the second proposition, we find nothing in the statute authorizing the assessors to find, or put a specific limit on, the amount of real estate belonging to incorporated educational and scientific institutions entitled to exemption, provided the same is in fact and good faith solely occupied and (it may be inferentially added) appropriately used for the purposes for which they were incorporated. Whether any or all of

the real estate such institutions may own is in contemplation of the statute so occupied may be, and apparently is, in the instant case, mainly a question of law as applied to the substantially undisputed facts. Plaintiff's bill asks equitable relief on the ground that the premises in question were as a matter of law under the statute and material facts clearly shown and practically undisputed, exempt from taxation, and the levy without legal force, which gives equity jurisdiction to entertain the case and review the proceeding. A concurring opinion by Chief Justice COOLEY in *Albany & Boston Mining Co.* v. *Auditor General,* 37 Mich. 391, recognizes and plainly expresses the rule upon that subject as follows:

"I also agree in what has been many times said by the supreme court of Illinois; that equity will not interfere to restrain the collection of the public revenue for mere irregularities. Either it should appear that the property is exempt from taxation, or that the levy is without legal power, or that the persons imposing it were unauthorized or that they have proceeded fraudulently."

A suggestion of inconsistency or uncertainty runs through the record in the particular that the city authorities under substantially the same state of material facts exempted this property from taxation in previous years, recognized it as partly entitled to exemption in 1918 in making and reviewing the assessment, even to picking out what part of the lot should be taxed, and what should not, but finally spread the assessment over the whole premises as a unit, at a reduced valuation on the basis of a portion being exempt as shown by the excerpt from the blue print attached to defendants' answer and defendants' own evidence.

William Crewe, one of the assessors of the city, called by defendants, testified that the board of as-

sessors looked over the property, saying in part as follows:

"In making the assessment we took into consideration the fact that a school was being conducted there  *  *  * and placed the assessment at what we considered was just and equitable, allowing them for necessary building and ground for school purposes. *  *  *

"Q. Now in your best judgment you gave full allowance for the use of the property for school purposes, so far as you could determine?

"A. That was the judgment of the board. An appeal from our decision was taken to the city commission sitting as a board of review and they altered the assessment by making a larger allowance.

"Q. I show you here a copy of a plat attached to the answer filed in this case, and ask you what that represents.

"A. That represents a further reduction on the land; they allowed them 50 feet more than what the judgment of the board of assessors was.  *  *  * After we were given our instructions from the commission acting as a board of review, we then figured the assessment based on the allowance they ordered us to make, so that the assessment as it now stands is that fixed by the committee or board of review."

William E. Tallmadge, a city commissioner and member of the board of review, called by defendants, testified that they also looked at the property, saying:

"We figured in our visit there that all that would be required for school purposes would be the 150 feet wide and the depth back to the fence, back to their line, and that is shown to be 238 feet approximately. *  *  *

"Q. Arriving at that estimate you say you considered that this space that is outlined here, of 150x238, of the entire tract, would be sufficient to take for school purposes?

"A. Absolutely, and suggested that to the assessors with this exemption. I had nothing to do with the making of the figures that are on the bottom of this

exhibit. The total land values must have been figured out by the assessors. I might have seen them but am not sure. We instructed the assessors to fix the valuation with the consideration that 150x238 be exempt."

Christian Gallmeyer, another member of the board of review called by defendant, testified among other things:

"My personal idea was that if that was a school it might probably be entitled to a little more room than the assessors had decided, and to be liberal with them we would give them 50 feet more. That is, we figured the exemption as it was and added 50 feet additional. * * * We concluded to exempt 50 feet more than the assessors had done. * * * Instead of giving 100 feet we thought we would give 150."

Of the educational character of the Webb Academy it appears that William E. Webb, a teacher who has been engaged in educational work for approximately 25 years, is its president and general manager, and may be said to have been its founder. Previous to its incorporation he had conducted a private school in Grand Rapids for a number of years, at first in other quarters and later in the building upon the premises in question, which he leased for that purpose. On April 3, 1912, he with four others incorporated the institution and purchased the property, upon which there is yet a mortgage. The institution makes the required reports and complies with all legal obligations of an institution so incorporated, adopts as a basis the curriculum of the public schools, has a complete academic course of four years, upon conclusion of which diplomas are granted. Its certificates of credit are recognized in other institutions of learning. Its graduates are admitted upon their diplomas without entrance examinations to various colleges and have successfully continued their education in the University of Michigan, Albion College, Kalamazoo and Ypsilanti Normals and other institutions. It does special

work in tutoring and advancing by personal attention pupils deprived of early educational advantages and prepares those capable and so desiring for entering higher institutions. The trial judge finds upon that subject and states of certain of its instructors as follows:

"It includes a course of study which is the same as high schools of this city, and in addition thereto many pupils are attending for the purpose of being coached in some particular studies; pupils who have failed in the various schools of this city and need special work, also attend this academy; some of such work is conducted in the evenings in this building. * * * His (Webb's) wife is also one of the principal teachers therein. Miss DeGraff has been a teacher therein since the school was incorporated; Mr. George, father of Mrs. Webb, is also a lecturer and instructor therein; these four have been teachers constantly in this academy since its incorporation and some of them were teachers in this school building upon these premises before its incorporation."

It is strenuously contended for defendants that under the undisputed facts plaintiff's property is not occupied and used solely for the purposes of its incorporation, because Mr. and Mrs. Webb make their home in this building, her father, Mr. George, sometimes being a member of the family also, and she has at times kept help. It also is shown that a small portion of these grounds has been used for a garden and upon occasions parties have paid for storage of their automobiles in the barn upon the premises. This is not denied, but in that connection it is shown the barn is and has continuously been in possession of and used by plaintiff for storage purposes of the school, and some of its pupils while in attendance at school are permitted to shelter their bicycles and motorcycles there without charge; that the storage for which rental is paid has been but occasional, not exclusive,

and the charge small; that none of the property has ever been leased to exclusive use by others, but on the contrary has all been constantly in possession and control of plaintiff, in general use by it, as occasion arose, for school purposes. The only help kept by Mrs. Webb was a student living and working there for her board. Plaintiff kept no janitor. Mr. Webb looked after and did that class of work, attending to the grounds, heating of the building, etc. The following from the court's findings is fully sustained by the record:

"The incidental use of the school building as a residence as in the case at bar, is in the interest of and for the purpose of properly maintaining and conducting plaintiff's academy for the very object and purpose for which plaintiff was incorporated. * * * The school grounds and school building, all of the recitation rooms are kept in order by Mr. and Mrs. Webb; they are there in the early morning to have the rooms heated and prepared for its students when the school shall open; they do some of their instructing of pupils in the evening; they are there for that purpose; they are there during vacation times for the purpose of keeping and putting said building in condition for the opening of this academy at its next term."

Defendants' claim that the right to exemption was negatived by reason of gardening done upon the premises does not impress us as seriously formidable. There was a small family garden spot at one side of the lot utilized in the customary way, which did not interfere with the use of the grounds by the pupils during the school year, nor they with it. Inspired by the war garden drive which swept over the country, Mr. Webb was that year moved to such patriotic efforts at gardening that the garden on plaintiff's property was enlarged to the extent of a strip 30x60 feet; apparently devoted largely to corn, as assessor Crewe, who in an effort to ascertain the facts visited the premises in vacation and saw no signs of a school going on there, states of what he did discover: "Inside

of the Webb premises I saw no fence, nothing but a cornfield." Whatever might be said of the accuracy of his observations, his idea that cornfields are to be found on the rear of urban lots did not come from Kansas. Neither did Mr. Gallmeyer's idea that "*if* there was a school it might probably be entitled" to 50 feet more room than the assessors allowed, indicate a very thorough investigation of what use the premises were devoted to. It is in truth undisputed that those entire premises were used by the pupils for recreation games and other school purposes in the manner and as school grounds are customarily used. They were almost entirely sodded, recitations were sometimes heard under the trees in pleasant weather and were helpful in nature studies. The smaller pupils played their games amongst the trees, and the older ones their athletic games in the more open part. A tennis court, baseball and football grounds were maintained within the possibilities of the ground and a football team was developed to a point where it played match games with other schools.

We can discover no sound legal support for defendants' partial exemption of these premises under the undisputed facts. There is no middle ground under defendants' own contention. The buildings and a part of the specified grounds nearest to them were exempted because occupied and used by plaintiff for educational purposes, while the rest of this single lot of less than two acres was taxed, either on the theory that, though used, it was not needed for educational purposes, or the assumption that it was not in fact occupied for such purpose. It is shown beyond dispute that the Old Fisher Homestead was long ago set apart and thereafter held and used as a distinct property with a single defined boundary, was built upon centrally, improved, ornamented, owned and occupied as an entirety either for residential or educational purposes.

That plaintiff was in full possession and control of the premises, and maintained an academy there, is not questioned. The essence of defendants' contention is that the property was nevertheless not exempt within the requirements of the statute because not solely occupied and used by plaintiff for educational purposes. The only contrary claimed use or occupation of possible significance relates to the buildings, which at the time of the assessment were reckoned by the assessing officers as exempt. It is now urged that exemption from taxation was destroyed by the fact that Mr. Webb lived with his family in the school building and neighbors had on a few occasions for limited periods paid Webb $3.50 per month for permission to shelter their automobiles in the barn.

As bearing upon the occasional rental of extra storage room in the barn, it is said in 1 Cooley on Taxation (3d Ed.), p. 350:

"If the exemption is only of property used for school purposes, it will not apply to property held merely for revenue, * * * but school property will not lose its exemption by being leased in vacation, neither will church property by a merely incidental and occasional use for schools or by occasional renting for entertainments."

Acceptable to the often quoted utterance in the ordinance of 1787 that "Knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged," even the anticipatory Constitution of 1835 provided: "The legislature shall encourage, by all suitable means, the promotion of intellectual, scientific and agricultural improvement," and a constitutional mandate of like import has since been carried through all the changes of our Constitution, supporting much appropriate legislation to that end. It may be conceded that exemption of the premises in prior

years is not controlling, that the burden is upon the party claiming exemption, and as a general rule statutes exempting from taxation are to be strictly construed, which "is not, however, to be extended so far as to defeat the legislative intent." 1 Cooley on Taxation (3d Ed.), p. 362. And it has been said that the rule is not so rigidly adhered to in construing exemptions for educational purposes as those applicable to more strictly commercial or business enterprises. (Foot-notes, 21 L. R. A. [N. S.] 165).

The early case of *Detroit Young Men's Society* v. *Mayor, etc., of Detroit,* 3 Mich. 172, is cited by defendants' counsel as the case first dealing with this feature of the statute and sustaining its method of taxing the premises in question as a whole on a reduced basis, because but a portion of it was used for educational purposes. The then form of the statute exempted—

"The personal property of all library, benevolent, charitable and scientific institutions incorporated within this State, and such real estate belonging to such institutions as shall actually be occupied by them for the purposes for which they were incorporated." Act No. 86, Laws 1853, § 5, subd. 8.

There plaintiff was incorporated under an act of 1836 "for the purpose of moral and intellectual improvement" and was by its incorporation authorized "to establish and superintend a library." It owned and occupied the upper part of the building called "The Young Men's Hall," and the lot on which it was located in the business section on Jefferson avenue in the city of Detroit. The lower or first story of the building was finished into two stores for rental purposes. These with the basement below them were leased and occupied by their tenants for business purposes, as were also two offices in the second story. The library and lecture hall of the society, which it actually had possession of and occupied for the purposes of

its incorporation, were all above the first floor. The building covered the whole of the lot on Jefferson avenue. Recognizing its right to exemption of that part of its real estate which it actually occupied, the court held that under such conditions of divided possession of an income-paying business property the exemption to which the owner was entitled might be worked out by spreading the legal description of the property upon the roll for taxation and excluding in the estimate of its value that portion actually occupied by plaintiff for the purposes of its incorporation. No such situation is presented here.

The nearest analogous in essentials of any decision in this jurisdiction is *Detroit Home & Day School* v. *City of Detroit,* 76 Mich. 521 (6 L. R. A. 97). That school was incorporated under the same act as the Webb Academy. It owned real estate in the city of Detroit with buildings thereon which it occupied for the purposes for which it was incorporated, conducting thereon a seminary with such courses of study and discipline as are usual in academies. As its name indicates it maintained both a day, and home or boarding school, the fees for board and tuition being $250 a term in "the home department." The institution was maintained by "tuition and board fees." The claim for exemption of its realty from taxation was sustained, Justice CAMPBELL writing the controlling opinion. Quoting the familiar passage from the ordinance of 1787, now embodied in our Constitution, it is said:

"Exemption from taxation is the only form of encouragement that our laws provide. That they have always provided, and they have not required tuition to be free, even in our public institutions, most, if not all, of which, except in favored circumstances, derive considerable revenue from pupils. The advantage of multiplying the facilities of learning has been rightly regarded as worth to any decent community very

much more than can be counted in money. The only condition imposed on the exemption is that the land exempted shall be 'occupied for the purposes for which they were incorporated.' *  *.  *

"The language of the legislature in exempting from taxation is as much entitled to obedience as that imposing taxation. This law has been in force for a very long time, and has never been amended, except to enlarge the scope of the exemption. Its purpose, as expressed, does not appear ambiguous, and in the continued application of it has not impressed any legislature as too liberal."

It is urged for plaintiff this decision is conclusive in its favor.

It is pointed out for the defense that subsequent to that decision the words "educational" and "solely" have been added to the applicable provision of the exemption law, and that in *Parsons Business College* v. *City of Kalamazoo*, 166 Mich. 305 (33 L. R. A. [N. S.] 921), a corporation organized under the same act and conducting a school on its own premises with the principal occupying a portion of the building as a family residence, was held not entitled to the exemption. In that case the court as a secondary reason makes reference to the word "solely" as narrowing the scope of the exemption, as applied to an entire story of the building being used for a residence and the fact that a large portion of the valuable realty claimed exempt was vacant and held for an advance in value, but the primary controlling reason given for denying the relief asked was that the so-called business college was not in pursuit or purpose of the class contemplated by the exempting legislation, did not in any way measure up to the standard it had "set up and claimed for itself," was organized and conducted for a special purpose with short courses, the longest not exceeding a year, while the act under which it was incorporated forbids granting diplomas on a course of study less than two years; and that it was

shown by the record to have been incorporated under the act "to avoid taxation, and not to obtain recognition as a general educational institution." It is also said that *Detroit Home & Day School* v. *City of Detroit, supra,* furnishes the standard by which to measure such applicants for exemption, and by comparison pointed out that the so-called college with its short special business courses wholly fails to meet the requirements for institutions of learning contemplated by either the exemption law or the act under which it was incorporated; for which reasons the court held it "cannot be called a general educational institution," nor be found to occupy and use its real estate for the purposes for which it was incorporated.

As to the use of the building for a residence, it was shown undisputed and found by the trial court that all persons residing upon the premises were connected with the institution in some capacity of service necessary and incidental to their school work therein. Such a situation was not found to militate against exemption in the *Detroit Home & Day School Case,* and the weight of authority sustains the conclusion of the learned trial judge that the added words in the act as applied to the instant case did not destroy the exemption. Of which he says:

"That has been the holding in many respectable courts of last resort where the statutes of that State used the words 'exclusively' and 'solely,' and in States where the statute used the word 'necessarily,' and in other States where the statute used the word 'exclusively:'"

Citing various sustaining authorities from other States under similar statutory wording, several of which are referred to in the foot-notes to the leading case of *State, ex rel. Spillers,* v. *Johnston,* 21 L. R. A. (N. S.) 171 (214 Mo. 656, 113 S. W. 1083), where it is said upon this subject:

"In accordance with *State, ex rel. Spillers,* v. *Johnston,* it has been almost uniformly held that the statutory exemption from taxation of property used exclusively for school or educational purposes is not destroyed by the fact that the proprietors, teachers, or other persons connected with the school reside in the building, when such residence therein is merely incidental to the use of the building as a school, and is not made the primary object of the persons interested."

In the *Johnston Case* the word "exclusively" is used in the exempting act, as in various other cited cases. "Exclusive" and "sole" are recognized by lexicographers as synonymous. Century Dictionary.

In *Bishop, etc., of St. John's Cathedral* v. *County Treasurer,* 29 Colo. 143 (68 Pac. 272), exemption was claimed and sustained for an Episcopal school building and site (consisting of over seven lots in a single inclosure) known as Matthews' Hall. The bishop of the diocese was the chief instructor and resided in the building with his family, his wife assisting in looking after the school. It was a day school and the attendance small. The students lived elsewhere and attended there only for recitations and lectures. The statute of that State exempted from taxation "lots, with the buildings thereon, if said buildings are used solely and exclusively  *  *  *  for schools," etc. The court there said in part:

"The words 'solely' and 'exclusively' employed in the provisions of the law under consideration are words of limitation which in their ordinary sense strictly limit the subjects to which they refer, but their purport and meaning in this instance must be ascertained from the intent of the people and the legislature in exempting from taxation property used for educational purposes. In providing for these exemptions, the object was to foster educational institutions by relieving their property, within prescribed limits, from the burden of taxation. This being the end to be attained, the meaning of the law must be ascertained by a construction within its spirit, purpose and policy not opposed to its letter. In brief — a construction

consonant with the spirit which prompted the adoption of the provisions in question, and which will give them full effect. * * * The fundamental object of the law was to exempt property used for school purposes from taxation. To carry out this design, the uses permissible must necessarily embrace all which are proper and appropriate to effect the objects of the institution claiming the benefits of the exemption. (Citing numerous decisions.)

"So that a use incident to the main purpose for which the property is held is not one which falls within the prohibitions contemplated by the law. Tested by these considerations, the occupation of the premises by the bishop and his family does not render the property subject to taxation. He is there as an instructor; a school cannot be conducted without teachers and the mere fact that the bishop resides on the premises with his family is but an incident to the main purpose which requires his presence."

Among other cases cited is *Yale University* v. *Town of New Haven,* 71 Conn. 316 (42 Atl. 87, 43 L. R. A. 490), an exhaustive and carefully considered case, dealing thoroughly with the subject, historically and otherwise, it being said in conclusion of the exemption act under consideration:

"This statute was intended to serve a great public use in pursuance of a most beneficial public policy, and the construction to be given such a statute requires that the intent shall not be defeated either by clear evasion or undue restriction."

We note that the learned trial judge who heard this case made a studious and thorough review of the questions involved with examination and citation of many authorities from various jurisdictions relating to the subject of exemptions. We find no occasion to disturb the conclusion which he reached.

The decree is affirmed, with costs to plaintiff.

MOORE, C. J., and BROOKE, FELLOWS, STONE. BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.