No. 26,559.

THE KANSAS WESLEYAN UNIVERSITY OF SALINA, *Appellee,* v. THE
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SALINE,
and H. A. RAGLE, County Clerk, *Appellants.*

### SYLLABUS BY THE COURT.

TAXATION—*Exemptions—Educational Institution—Residence of President.* A
building owned by a college, in which meetings of the faculty and other
officials are held, situated across a street from the campus, in the same
block with dormitories for students, and occupied as a residence by the
president and his family, this arrangement being for the benefit of the
school, is held to be exempt from taxation on the ground that it is used
exclusively for educational purposes.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed
March 6, 1926. Affirmed.

*Bryan J. Hoffman* and *H. N. Eller,* both of Salina, for the appellants.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: This action was brought by the Kansas Wesleyan
University against public officers for an injunction against the taxa-
tion of property belonging to it, known as the Roach Home. The
plaintiff was granted the relief asked and the defendants appeal.

The question presented is whether under the facts found, which
are not disputed, the property in question is "used exclusively for
educational purposes," within the meaning of that language as used
in the constitutional provision concerning exemptions. (Const.
art. 11, § 1.)

The Roach Home is a nine-room building. It is upon land owned
by the plaintiff across the street from the campus, and in the same
block with two dormitories for the accommodation of young women
students. It was given to the plaintiff by a former president of the
school. The court found:

"It was the controlling purpose of the donor making the gift to provide a
home for the president in close proximity to the other university buildings,
for the primary benefit of the university, to be used for official meetings, for
meetings of members of the faculty with the president, for the assemblage of
bodies connected with the university and for official entertainments. Said
property has been so used for many years. Roach Home is a nine-room
building. The president, with his family, occupy said building. In it he has

Taxation, 37 Cyc. pp. 907 n. 30, 908 n. 31, 935 n. 55, 936 n. 63, 937 n. 68; 21
L. R. A. n. s. 171; 50 L. R. A. n. s. 1204; 26 R. C. L. 322.

his study and library, and here he performs many of his official duties.  No member of the faculty resides on the university grounds except the president, and the close proximity of the president to the activities of the institution is proper and necessary to a more orderly and efficient discharge of his official duties.  The university authorities take care of the property in controversy, keeping the building in repair, mowing the lawn and the like, and bear all expenses incurred therein. . . .  The residence of the president and his family therein was merely incidental that the president might better discharge and perform his official functions."

A claim of exemption from taxation must be clearly established to be sustained.  We think the showing here made abundantly meets that requirement.  Obviously the occupancy of property as a residence by the president of a school and his family does not in and of itself constitute its use for educational purposes.  But neither is it inconsistent with its exclusive use in that way.  Where such occupancy is for the benefit of the school rather than of the occupant— is intended to serve the ends for which the school is maintained, is adapted thereto and actually accomplishes that object—it becomes in itself an exclusively educational use.  The trial court finds that to be the situation here.  The holding of the official meetings and school gatherings in the building characterizes it as a part of the machinery by which the affairs of the institution are administered. That use is clearly educational.  As those in control consider the habitual presence there of the head of the school necessary to an efficient administration, and as his living there with his family is necessary to bring that about, the occupancy of the building as the president's home is in itself an educational use.

Cases holding exempt from taxation buildings occupied as residences by school officers and teachers, under laws not making exclusive use for educational purposes requisite to exemption (37 Cyc. 937; 26 R. C. L. 322), are of course not authority for sustaining the plaintiff's claim in the present case.  But decisions are not lacking holding property exempt under conditions, including the language of the laws to be interpreted, quite similar to those here presented, as the following quotations show:

"The phrase 'exclusively used' has reference to the primary and inherent use as over against a mere; secondary and incidental use. . . .  If the incidental use (in this instance residing in the building) does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold."  (*State, ex rel., v. Johnston,* 214 Mo. 656, 663, annotated in 21 L. R. A., n. s., 171, 174.)

"The words 'solely' and 'exclusively' employed in the provisions of the law under consideration are words of limitation which in their ordinary sense strictly limit the subjects to which they refer, but their purport and meaning in this instance must be ascertained from the intent of the people and the legislature in exempting from taxation property used for educational purposes. . . . The fundamental object of the law was to exempt property used for school purposes from taxation. To carry out this design, the uses permissible must necessarily embrace all which are proper and appropriate to effect the objects of the institution claiming the benefits of the exemption. . . . So that a use incident to the main purpose for which the property is held is not one which falls within the prohibitions contemplated by the law. Tested by these considerations, the occupation of the premises by the bishop and his family does not render the property subject to taxation. He is there as an instructor; a school cannot be conducted without teachers; and the mere fact that the bishop resides on the premises with his family is but an incident to the main purpose which requires his presence." (*Cathedral St. John v. County Treas.,* 29 Colo. 143, 145, 146.)

"The law provides: 'The real property of a corporation or association organized exclusively for . . . educational . . . purposes . . . and used exclusively for carrying out thereupon . . . such purposes . . . shall be exempt from taxation. . . .' The university also maintains for the use of the chancellor an official residence, the use of which is by the contract between them a part of his compensation. The residence is not situated upon the main campus, but is conveniently located about four blocks therefrom. If it was located upon the campus, I apprehend that no question would be made but that it was exempt. The principal objection to this residence appears to be that in the judgment of the assessors it is too elaborate, and that a more modest building would adequately house the chancellor and his family. I am convinced that the discretion to decide as to what manner of a residence will comport with the dignity of the chancellor of a great university, and will enable him to perform such duties of his office as can best be done therein, is committed to the trustees of the university, and not to the assessors.

"The evidence shows that in the performance of his duties as the head of the institution it is desirable that he conduct meetings and other occasions of a social nature, and that it is customary and most fitting and convenient that those duties be performed in his residence. Under those circumstances, the finding is justified that the dominant and principal purpose of the occupancy of the chancellor was that for which the university is incorporated, an educational purpose, and that its use as a residence was incidental. Such use of the property entitles it to the exemption. [Citing cases.]" (*In re Syracuse University,* 209 N. Y. Supp. 329, 334, 339.)

"The uses of property in these tax cases for the work of the institution are necessarily relative and usually are not absolutely essential, and the distinction in the different cases as to the application of the law may not be always entirely clear and satisfactory from a cursory reading of the opinions. The conclusion in each of these decisions is necessarily governed by the specific facts in the individual case. The home of the president of Knox College in this case was eleven blocks from the college campus and was not so closely connected with the work of the main institution as to distinguish it from any

other home. . . . So far as the record shows here, the president's house is primarily a home, without any condition for educational purposes or work being required to be performed there." (*Knox College v. Board of Review,* 308 Ill. 160, 165. See, also, *Webb Academy v. Grand Rapids,* 209 Mich. 523; *Princeton v. State Board Taxes,* 96 N. J. L. 334; *The Trustees of Griswold College v. The State of Iowa,* 46 Ia. 275; *State, ex rel. Eveland, v. Erickson,* 44 S. D. 63; *Blackman v. Tax Collector et al.,* 90 La. 592; Note, 50 L. R. A., n. s., 1207-1209.)

The judgment is affirmed.