STATE BOARD OF TAX APPEALS.

TRUSTEES OF RUTGERS COLLEGE, PETITIONERS, v.
TOWNSHIP OF PISCATAWAY, RESPONDENT.

Decided March 31, 1942.

For the petitioner, Fred W. DeVoe.

For the respondent, *Maurice M. Bernstein.*

QUINN, President.   In 1939 petitioners acquired a tract
of land in the respondent taxing district, upon which was
situated a large dwelling.   This property was purchased for
the purpose of providing the president of Rutgers University
with a dwelling near the campus.   The intention of petitioners
in providing this building for the occupancy of the president
is clearly manifest from the proofs which show the specific
uses thereof made by the president, in addition to his occu-
pancy thereof as a home for himself and his family.   These
proofs are detailed hereinafter.

The building in question was assessed for taxation for the
year 1940 by the respondent taxing district in the sum of

$24,000, and the land upon which same was situated was assessed at $2,400, or a total of $26,400. While the proofs do not make the matter entirely clear, the land assessment is intended to cover the curtilage of approximately eleven acres, upon which the building stands. The deed conveying the property to the petitioners included a parcel of meadowland of approximately twenty-five acres, which is separately assessed. Petitioners contend that the building, together with the curtilage to the extent of five acres, is exempt from taxation under *R. S.* 54:4-3.6; *N. J. S. A.* 54:4-3.6, upon the asserted ground that the structure is a building constituting part of Rutgers University, and that the land, to the extent of five acres, is necessary for the fair enjoyment of the building. The material portion of the statute provides as follows:

"The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies, or seminaries; * * * land whereon any of the buildings hereinbefore mentioned are erected and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purposes and does not exceed five acres in extent; * * *."

The respondent taxing district takes the position that the building is simply the dwelling of Dr. Clothier, president of the university, and his family, and that any other use to which the building is put, relating to college or university activities, is merely incidental thereto. It is further contended that there is a clear distinction between a private dwelling for a college officer, on the one hand, and a building actually used for a college, on the other. Finally it is asserted that the land upon which the building is situated is not necessary for its fair enjoyment, and that the same should not, under any circumstances, be exempt from taxation.

It was clearly apparent from the testimony offered on behalf of the petitioners that the purpose of the university trustees in acquiring this property was to provide the president with a home which should not only suffice for his personal needs, but could serve the purpose of an administrative center from which the president could direct the university

and its activities and at which he could hold meetings of the faculty, student groups, administrative officers and officially greet and entertain the official guests of the university. With these purposes in mind the building was remodeled immediately upon its acquisition, so as to enlarge the dining room and kitchen facilities thereof, and provide additional rooms in which the contemplated meetings could be held. This work would not have been necessary had it been intended to limit the use of the building strictly as a dwelling for Dr. Clothier and his family. The location of the property was deemed satisfactory by the trustees, being distant only one mile from the main university campus in New Brunswick, and immediately adjacent to what is called the "River Road Campus," where the college stadium, athletic fields and golf course are situated. The actual uses of the building include meetings of the board of trustees of the university, the executive committee of the board of trustees, the New Jersey State Board of Regents, afternoon and dinner meetings of the faculty and various faculty groups, student organizations and groups, conferences of administrative officers and of the deans of the several colleges, and the accommodation of official guests of the university, such as chapel speakers, lecturers, visiting lecturers and persons in attendance at such activities as the recent celebration of the 175th anniversary of the college. It was satisfactorily shown that there is hardly a single weekday of the entire year, exclusive of the month of August, during which the building is not used for one or another of the several types of college uses described hereinabove.

Despite the foregoing, respondent urges that the use of the word, "actually," in the statutory provision granting exemption to "buildings actually used for colleges * * *," in contrast with the previous language of this provision under the act of 1851, which provided for an exemption of "all colleges, academies, or seminaries of learning * * *," indicates a legislative intention to limit the exemption thus granted, to such structures as are actually and exclusively used for purposes of instruction of students directly, and to exclude structures having only, as it is described, an incidental connection with the college, but primarily used for the

private purposes of individuals associated with the institution. In *State* v. *Ross* (*Supreme Court,* 1854), 24 *N. J. L.* 497, the court was confronted with the question as to whether the statutory exemption granted under the act of 1851, quoted hereinbefore, included dwelling houses and grounds occupied by the president and vice-president of a college and by the professors and steward thereof. The court made the following observations (at *p.* 499) :

"What buildings and lands are included in that term? If it be limited to such buildings as are indispensable to a seminary of learning, then dormitories and refectories must be excluded, for they are not essential * * *. If the term be not confined to the mere lecture or recitation room, then it must be so construed, as intended to include everything necessary to the proper management of the institution, according to the plan and principles on which it was originally founded, or by authority subsequently granted."

The court concluded that it was apparent that the trustees of the college deemed it both needful and convenient for the uses of the college that they should purchase and build, not only the dormitories and apartments for the students, recital rooms and refectories, but also dwelling houses for the president and the professors. The court further stated (at *p.* 500) :

"To enable the officers to exercise the proper discipline, it was necessary that they should dwell in the proximity of the students; and be provided with apartments either in the same buildings with them, or in dwelling houses adjacent."

And (at *p.* 501) :

"The providing of these dwelling houses was clearly within the scope of the authority given by the charter, and they are to be taken as a part of the college, and together with the lands whereon they are erected, must be considered to be within the exemption of act."

The problem before us, thus, is as to whether the position taken by the court should be deemed inapplicable to-day because of the change in the statutory language now controlling, and further, if it should be deemed that the case is still an authority, whether the particular property before us, in the light of its uses and the circumstances of its acquisition by

petitioners, is exempted from taxation under the criteria outlined in that case.

We have concluded that the alteration in the statutory language is not material, so far as the facts and circumstances of this case are concerned. The language of the act of 1851, exempting, as hereinabove noted "all colleges, academies and seminaries of learning," remained intact until 1903, when, in the enactment of the General Tax Act of 1903 (*Pamph. L.* 1903, *ch.* 208), it was provided, in section 3 (4), that there should be exempted, *inter alia,* "all buildings actually and exclusively used for colleges, schools, academies and seminaries * * *." An examination of the entire act of 1903 indicates that the general wording of all of the provisions relating to exemption of any type of property was revised thereby. There is no indication that the legislature had any other object in changing the language of the provisions relating to colleges, &c., than to make it certain that no exemption should be granted to buildings owned by colleges, as well as to those owned by charitable, educational or religious organizations generally, which were not exclusively devoted to the exempt-type purposes. We find no evidence of any intention that the concept of a "college" was to be narrowed, or that what was regarded in the *Ross* case as being within the proper scope of the purposes for which a college might properly acquire buildings and claim exemption for them, was intended to be superseded.

In any event, the significance which respondent maintains is inferable from the history of the act, is dissipated by the fact that the word "exclusively" was taken out of the statute, under an amendment thereof by *Pamph. L.* 1913, *p.* 570. From this amendment it would clearly appear that the legislature intended some degree of liberality in the construction of the statutory reference to buildings "actually (but not exclusively) used for colleges, &c."

We therefore conclude that *State* v. *Ross, supra,* continues to be an authority to-day.

Passing to the question as to whether the degree of authority vested in the trustees of the college was sufficiently broad to warrant its making of the investment in question for educational purposes, we are of the opinion that a consideration

of the charter of the college, and of the trend of the decisions throughout the country interpreting the question as to what types of buildings may be deemed to be used for educational purposes, is dispositive of the issue in the affirmative.

The charter of 1770, granted by George III, invested the trustees therein named with the right and privilege to establish a college called "Queen's College" (changed to Rutgers, November 30th, 1825), and with the legal power and authority, "for the use of the said college, to have, get, acquire, purchase and receive and possess lands, tenements, hereditaments, jurisdictions and franchises, for themselves and their successors, in fee simple or otherwise, howsoever; and to purchase, receive, or build any house or houses, or any other buildings as they shall think needful and convenient for the use of the said Queen's College; and in such place or places in this, our Colony of New-Jersey, as they the said trustees, or the major part of them, met as aforesaid, shall agree upon * * * *."

It cannot be gainsaid that the petitioner trustees did deem it "needful and convenient for the use" of the college that the premises in question should be acquired and used, as in fact they are, for the best interests of the university. Dr. Clothier has no right, title or interest in and to this property, other than his occupation thereof at the pleasure of the trustees of the University who have title thereto. The objective in its acquisition was not the serving of his private convenience, as an end in itself, but the provision for him of such facilities as would tend to enable him to render a maximum degree of service and devotion to the interests of the university. When this is the primary and moving purpose in the maintenance of an official residence by a college or university, for its president or other executive officers, it is held with substantial unanimity, in other states, that the building in question is devoted to educational purposes, and is entitled to exemption from taxation, under statutes exempting buildings or property used for educational or college purposes. *In re Syracuse University,* 214 *App. Div.* 375; 212 *N. Y. Supp.* 253; *Mary Immaculate School of Eagle Park* v. *Ossining,* 185 *App. Div.* 5; 175 *N. Y. Supp.* 701; *Wheaton College* v. *Norton,* 232 *Mass.* 141; 122 *N. E. Rep.* 280; *Lancaster*

*Academy* v. *Town of Lancaster,* 242 *Mass.* 553; 136 *N. E. Rep.* 626; *In re Board of Commissioners of Saline County,* 120 *Kans.* 496; 243 *Pac. Rep.* 1055; *Kenyon College* v. *Schnebly,* 31 *Ohio Cir. Ct. R.* 150; *State* v. *Carleton,* 154 *Minn.* 280; 191 *N. W. Rep.* 400; *Harvard College* v. *Assessors,* 175 *Mass.* 148; *Phillips Academy* v. *Andover,* 175 *Mass.* 118; *City of Nashville* v. *Ward Belmont School,* 7 *Tenn. App.* 610.

Where, however, a residence is furnished purely for the personal convenience of the official in question and there is no intention or purpose of serving the needs of the college or university in connection therewith, it is held that there is no right of exemption. *Burris* v. *Tower Hill School Association,* 6 *W. W. Harr.* 577; 179 *Atl. Rep.* 397 (recognizing the soundness of the rules discussed hereinabove); *State* v. *Waggoner,* 162 *Tenn.* 172; 35 *S. W. Rep.* (2d) 389, where it was likewise recognized that where the dominant purpose in acquiring a residence for a school official, is to promote the efficient administration of the institution rather than furnish a habitation for him, the residence will be considered as being used for educational purposes; it was there held, however, that the particular property in question did not come within the rule. *Cf. Assessors* v. *Jacksonville Realty and Mortgage Co.,* 177 *Fla.* 403; 81 *So. Rep.* 524; *Knox College* v. *Board of Review of Knox County,* 308 *Ill.* 160; 139 *N. E. Rep.* 56.

For the foregoing reasons, we are of the opinion that the dwelling house here in question was entitled to exemption from taxation for the year 1940, and the assessment thereof will be ordered set aside. As to the land, we are satisfied that the fair use and enjoyment of a structure of this character requires the use of the statutory maximum of five acres of the eleven-acre curtilage upon which the structure is situate. If the parties can agree and stipulate as to the fair value of such a five-acre parcel, and if such valuation is less than the assessed valuation of the land here under appeal, an order will be made reducing the assessment to such sum. If the parties cannot agree with reference thereto, the matter will be set down for hearing and determination by the board.

Judgment accordingly.