AMERICAN LEGION MEMORIAL HOME ASSOCIATION OF
GRAND RAPIDS v CITY OF GRAND RAPIDS

Docket No. 57221. Submitted May 6, 1982, at Grand Rapids.—Decided
   August 24, 1982.

Plaintiff, American Legion Memorial Home Association of Grand
Rapids, appealed to the board of review for the City of Grand
Rapids from an ad valorem property tax assessment by defen-
dant, City of Grand Rapids. The board of review denied the
plaintiff's claim of exemption. Plaintiff then appealed to the
Michigan Tax Tribunal which affirmed the denial of plaintiff's
claim of exemption for the years 1978, 1979, and 1980. Plaintiff
appeals from that determination alleging error in the denial of
the claim of exemption. *Held:*

   1. The Tax Tribunal made a clear error of law in ruling that
plaintiff's building lost its exemption because of the social
purposes for which it was used and the use of the building by
nonveteran organizations.

   2. To the extent that the building was used as a social
gathering place for members, the use was clearly consistent
with the normal use of a veterans' memorial home and with
the purposes for which the memorial home was incorporated.

   3. With respect to the use of the building by nonveteran
organizations, it is undisputed that plaintiff avoided profiting
from the loan of its building to community groups, and only
allowed use of the building to groups whose aims were consis-
tent with American Legion purposes.

   4. The purposes found objectionable by the Tax Tribunal did
not detract from the primary purpose of the building as a site
for strictly American Legion functions.

   5. It was not the intention of the Legislature that either the

REFERENCES FOR POINTS IN HEADNOTES
[1, 6] 71 Am Jur 2d, State and Local Taxation §§ 365, 368, 370, 376,
   384.
   77 Am Jur 2d, Veterans and Veterans' Laws §§ 173, 175.
[2] 71 Am Jur 2d, State and Local Taxation §§ 326, 327.
   73 Am Jur 2d, Statutes §§ 145, 146.
[3] 71 Am Jur 2d, State and Local Taxation §§ 368, 370.
[4, 6] 73 Am Jur 2d, Statutes § 178.
[5] 2 Am Jur 2d, Administrative Law §§ 617, 679, 688, 689.

use of the plaintiff's memorial home by nonveteran organiza-
tions or the social nature of some of the purposes served by the
building in this case would justify denial of the building's tax-
exempt status.

The denial of a property tax exemption for the years 1978,
1979, and 1980 is reversed. Property taxes paid by plaintiff to
defendant for those years shall be refunded.

1. TAXATION — EXEMPTIONS — VETERAN'S MEMORIAL HOMES.

Four requirements must be met in order for a veteran's memorial
home to qualify for a property tax exemption under the statute
regarding property exempt from taxation: (1) the property must
have been owned and occupied by the exemption claimant; (2)
the exemption claimant must have been a memorial home of
world war veterans; (3) the exemption claimant must have been
incorporated under the laws of Michigan; and (4) the buildings
and other property thereon must have been occupied by the
exemption claimant solely for the purposes for which it was
incorporated (MCL 211.7[d]; MSA 7.7[d]).

2. TAXATION — EXEMPTIONS — JUDICIAL CONSTRUCTION.

Exemption from taxation is the antithesis of tax equality, there-
fore, exemption statutes are to be strictly construed against the
property owner and in favor of the public; the availability of
the rule of strict construction, however, does not relieve the
courts of their primary duty to ascertain the intent of the
Legislature.

3. TAXATION — EXEMPTIONS — USE FOR EXEMPT PURPOSES.

Tax exemption is not lost, with respect to a statutory require-
ment that an institution be occupied solely for the purposes for
which it was incorporated, by virtue of occasional or incidental
uses for other purposes; tax exemption is not lost where a
building is occasionally used for social purposes or is let out to
other organizations where the primary use of the building is for
clearly exempt purposes.

4. STATUTES — AMENDMENT.

An amendment of a statute may be adopted for the purpose of
making plain what the legislative intent had been all along
from the time of the statute's original enactment.

5. APPEAL — TAX TRIBUNAL — CONSTITUTIONAL LAW.

The Court of Appeals, in reviewing a decision by the Michigan
Tax Tribunal, must determine if the decision was authorized by

law and supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

6. TAXATION — EXEMPTIONS — LEGISLATIVE INTENT — CLARIFICATION OF INTENT — VETERANS' MEMORIAL HOMES — NONVETERAN USE.

> It has always been the intent of the Legislature that the use of veterans' memorial homes for nonveteran functions does not serve to disqualify such homes from tax-exempt status; a 1980 amendment to the statute regarding property exempt from taxation serves to clarify this intent (MCL 211.7p; MSA 7.7[4m]).

*Benjamin Baum,* for plaintiff.

*Daniel A. Ophoff,* Assistant City Attorney, for defendant.

Before: D. F. WALSH, P.J., and WAHLS and G. R. McDONALD,* JJ.

D. F. WALSH, P.J. After enjoying tax-exempt status for many years, plaintiff, American Legion Memorial Home Association of Grand Rapids, received a notice of an ad valorem property tax assessment from defendant City of Grand Rapids in 1978. Plaintiff's appeals to the board of review for the City of Grand Rapids and the Michigan Tax Tribunal were unsuccessful. The Tax Tribunal's decision, applicable to the tax years 1978, 1979, and 1980, affirmed the denial of plaintiff's claim of exemption. Plaintiff appeals from that determination.

Plaintiff, a Michigan corporation, consists of eight American Legion posts within metropolitan Grand Rapids. This controversy concerns the tax status, in 1978, 1979, and 1980, of the memorial home owned by plaintiff and used by its member posts and others for a number of purposes.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff's articles of incorporation describe the purposes of the corporation as follows:

"(a) To foster and promote the purposes and ideals of the American Legion; (b) To plan and promote as a joint undertaking by all member Posts all activities pertaining to civic affairs, to welfare work, and to legislation fostered by the American Legion; (c) To buy, sell, lease, own, and control real and personal property, and especially to buy, own, and maintain a memorial home for the benefit of members and friends."

Plaintiff's member posts are part of the American Legion, a congressionally chartered national organization of American war veterans. The purposes of the American Legion, which are incorporated into plaintiff's articles of incorporation, are expressed in the American Legion constitution:

"To uphold and defend the Constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred percent Americanism; to preserve the memories and incidents of our associations in the great wars; to include a sense of individual obligation to the community, state and nation; to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good-will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy; to consecrate and sanctify our comradeship by our devotion to mutual helpfulness."

The memorial home is a single-story building containing an auditorium, meeting room, bar, kitchen, storage room, and office. Memorial plaques honoring distinguished veterans are displayed in the building.

The building is operated by a corporate board comprised of two veterans from each of the eight member posts. A description of many of the Amer-

ican Legion activities carried on in the building is found in the opinion of the Tax Tribunal:

"The subject property is used for a number of purposes which appear consistent with those of the national organization including regular individual monthly business meetings of six of the eight member posts; meetings to organize member post participation in patriotic parades and festivities, including an annual public flag burning ceremony held on the association's property; a church-memorial service for deceased veterans held biannually on the premises; meetings to plan and promote activities, aid and assistance for disabled veterans and their families, for causes of a charitable nature and in furtherance of community projects; various post banquets and dinners, to some of which wheelchair patients are escorted as guests; association sponsorship of a color guard and burial squad; occasional meetings of various veterans groups which are not affiliated with the association; several annual one day special schools for armed forces recruiters; training sessions for service officers from member posts who assist needy veterans and their families in securing food and clothing, in completing applications for government assistance and the like; and storage of post equipment, flags and regalia.

\* \* \*

"Each member post has its own ladies' auxiliary comprised of lady veterans (who are also post members), and wives, widows and daughters of honorably discharged or deceased veterans. The auxiliaries serve as supporting arms of the American Legion posts, functioning in furtherance of charitable causes and in fostering perpetuation of the Legion programs. Having access to the memorial home and its services, the auxiliaries hold their monthly meetings there, often in conjunction with the association's member posts." (Footnote omitted.)

In the relevant tax years, the corporate board

also approved use of the building by various civic organizations whose purposes were determined to be consistent with the philosophy and purposes of the American Legion. The facilities were provided to these groups on a non-profit basis; they were charged a nominal fee to cover cleanup and utilities. Meetings were held concerning youth athletic programs, high school oratorical contests relating to the United States Constitution, and programs designed to encourage high school students to visit college campuses and to participate in government. Such organizations as Rotarians, Optimists, Living With Cancer, the Grand Rapids Hockey Booster Club, credit unions, and the Grand Rapids Board of Education were permitted to use the building. The annual Grand Rapids raft race began at the building.

Four nights per week, the building's auditorium was open to the public for bingo sponsored, on respective nights, by plaintiff, the individual member posts, a women's baseball league (whose purpose was to raise money for college scholarships), and a national association of physically handicapped persons. The latter two organizations paid a service charge of between $100 and $150 per night to defray costs. Proceeds from the bingo games went to the sponsoring group.

Dances and parties were held at the building for members and their guests. The bar was open to members and their guests six days per week from 3 p.m. to 11 p.m. Drinks were available at prices below those of a Class C tavern. Profits realized from the operation of the bar were used to defray expenses, which included the salaries of the manager and assistant manager and the wages of bartenders and waitresses.

The auditorium was available to members[1] for weddings and receptions. A $.50 per person cleanup charge was imposed.

The Tax Tribunal ruled that plaintiff was not entitled to the claimed exemption because of the many nonveteran organizations which were allowed to use the building and because of the many "social" activities—weddings, receptions, dances, bingo—carried on at the memorial home.

The statute under which plaintiff claimed exemption from property tax provided:

"The following property is exempt from taxation under this act;

*  *  *

"(d) Real estate or personal property as shall be owned and occupied by * * * memorial homes of world war veterans incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which [they] were incorporated * * *." MCL 211.7(d); MSA 7.7(d) (subsequently amended by 1980 PA 142; see MCL 211.7p; MSA 7.7[4m]).

To qualify for exemption under the memorial home clause, four requirements had to be met:

1. The property must have been owned and occupied by the exemption claimant.

2. The exemption claimant must have been a memorial home of world war veterans.

3. The exemption claimant must have been incorporated under the laws of Michigan.

---

[1] Defendant challenged this assertion by showing that plaintiff's phone book yellow pages "halls and auditoriums" advertisement had not indicated that the auditorium was available only to American Legion members. The Tax Tribunal made no finding of fact concerning this disputed matter. We note, nonetheless, that there was no evidence that nonmembers ever rented the auditorium for weddings or receptions.

4. The buildings and other property thereon must have been occupied by the exemption claimant solely for the purposes for which it was incorporated.

*Engineering Society of Detroit v Detroit,* 308 Mich 539; 14 NW2d 79 (1944).

In this case, the Tax Tribunal found that the first and fourth requirements had not been satisfied.

It has long been held that, since tax exemption is the antithesis of tax equality, exemption statutes are to be strictly construed against the property owner and in favor of the public. *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976); *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 753; 298 NW2d 422 (1980); 2 Cooley, Law of Taxation (4th ed), § 672, p 1403 *et seq.* Availability of the rule of strict construction, however, does not relieve the courts of their primary duty to ascertain the intent of the Legislature. *Webb Academy v Grand Rapids,* 209 Mich 523, 535-536; 177 NW 290 (1920). Justice COLEMAN in her dissenting opinion in *Ann Arbor v University Cellar, Inc,* 401 Mich 279, 300-301; 258 NW2d 1 (1977), has best summarized this principle:

"Although [the rule of strict construction] is important, care must be taken not to misapply it. It is not a litany that rotely determines the outcome of every case involving a claimed tax exemption. Strict construction does not mean strained construction adverse to the Legislature's intent. It is only one principle of statutory construction which, together with many others, acts as a guide in the search for the Legislature's intent. * * * Justice COOLEY viewed the principle in its proper perspective when in his treatise, he said:

" 'When it is said that exemptions must be strictly

construed in favor of the taxing power, this does not mean that if there is a possibility of a doubt it is to be at once resolved against the exemption. It simply means that if, after the application of all rules of interpretation for the purpose of ascertaining the intention of the legislature, a well founded doubt exists, then an ambiguity occurs which may be settled by the rule of strict construction. The rule of strict construction does not relieve the court of the duty of interpreting the exemption by the ordinary rules of construction in order to carry out the intention of the legislature * * *. A fair and reasonable construction of the statute or contract must always be adopted, giving the language used its ordinary meaning, and taking into consideration the purpose and spirit of the exemption as well as the public policy entertained at the time * * * when the statute was passed.' [2 Cooley on Taxation (4th ed), § 674, pp 1415-1417.]

"The United States Supreme Court said it even more bluntly:

" 'Its proper office is to help solve ambiguities, not to compel an immediate surrender to them—to be an element in decision, and effective, maybe, when all other tests of meaning have been employed.' [*Citizens' Bank v Parker,* 192 US 73, 86; 24 S Ct 181; 48 L Ed 346 (1904).]

"The principle of strict construction should guide us, not blind us, when we search for the Legislature's intent."

With respect to a statutory requirement that an institution be occupied "solely" for the purposes for which it was incorporated, tax exemption is not lost by virtue of occasional or incidental uses for other purposes. 2 Cooley, *supra,* § 684, p 1432. If the primary use of a building is for clearly exempt purposes, the exemption is not lost because on occasion the building is used for social purposes or is let out to other organizations. *Id.,* § 685, p 1433.

With respect to memorial homes for war veterans, this rule of statutory interpretation was codi-

fied in the recent amendment of MCL 211.7; MSA 7.7, effective June 2, 1980, which provides:

"Real estate or personal property owned and occupied as memorial homes or posts is exempt from taxation under this act. As used in this section, memorial homes includes real estate and buildings owned and occupied solely by any veterans association, organization, or institution of the armed forces of the United States which is incorporated under the laws of this state and used solely for the purposes for which they were incorporated, but does not include buildings or portions of buildings which are not restricted to members and guests and are used for commercial operations permitting the patronage of the general public, including but not limited to dancehalls, bars with class C liquor licenses, bowling alleys, pool or billiard rooms, television rooms, and game rooms. Incidental or casual rental or leasing for nonveteran purposes is no bar to the exemption. It is the legislative intent that the making available of the exempt facilities for public assemblage or social affairs shall not be adequate cause to deny this exemption in whole or in part." MCL 211.7p; MSA 7.7(4m).[2]

While the statute, as amended, does not govern this action, it nonetheless serves as a persuasive guide in the ascertainment of the intent of the Legislature in originally exempting memorial homes from property taxation. The amendment was adopted soon after the controversy arose concerning proper interpretation of the statute as it applied to memorial homes. Under this circumstance, it is logical and permissible to conclude that the amendment was "adopted for the purpose

[2] See also 2 OAG, 1956, No 2562, p 691 (November 26, 1956), where the Attorney General recognized that memorial homes for war veterans are often used for social purposes. The Attorney General opined that a veterans' organization building would lose its tax-exempt status if it were used for commercial operations open to and dependent upon the patronage of the general public.

of making plain what the legislative intent had been all along from the time of the statute's original enactment". *Detroit Edison Co v Janosz*, 350 Mich 606, 614; 87 NW2d 126 (1957); 1A Sutherland, Statutory Construction (4th ed), §§ 22.30, 22.31, pp 179, 184.

In reviewing the Tax Tribunal's decision, we must determine if it was authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

In our judgment, the Tax Tribunal made a clear error of law in ruling that plaintiff's building lost its exemption because of the "social" purposes for which it was used and the use of the building by nonveteran organizations. To the extent that the building was used as a social gathering place for members, the use was clearly consistent with the normal use of a veterans' memorial home and with the purposes for which the memorial home was incorporated. Those purposes include the promotion of the spirit of comradeship among members. Significantly absent was a finding by the Tax Tribunal that the building served primarily "social" purposes. Compare *Ladies Literary Club v Grand Rapids, supra.* The tribunal's opinion itself outlines the many "nonsocial" purposes served by the building.

With respect to the use of the building by nonveteran organizations, it is undisputed that plaintiff scrupulously avoided profiting from the loan of its building to community groups. Compare *Circle Pines Center v Orangeville Twp*, 103 Mich App 593, 599; 302 NW2d 917 (1981). Only those groups whose aims were consistent with American Legion purposes were allowed to use the building. Quite clearly, the renting of the building did not inter-

fere with the primary use of the property by plaintiff for purely American Legion functions and did not subordinate plaintiff's occupancy of the building to nonveteran purposes. 2 Cooley, *supra,* § 686, pp 1434-1441.

We hold that it was not the intention of the Legislature that either the use of the plaintiff's memorial home by nonveteran organizations or the "social" nature of some of the purposes served by the building in this case would justify denial of the building's tax-exempt status under MCL 211.7(d); MSA 7.7(d). Any conclusions to the contrary would be inconsistent with a "fair and reasonable construction of the statute" and violative of the "purpose and spirit of the exemption". 2 Cooley, *supra,* § 674, p 1416. The purposes found objectionable by the Tax Tribunal did not detract from the primary purpose of the building as a site for strictly American Legion functions. In our judgment, the Legislature's intent, as recently clarified in MCL 211.7p; MSA 7.7(4m) has always been that use of memorial homes for "nonveteran" functions would not serve to disqualify such homes for tax-exempt status.

The denial of a property tax exemption to plaintiff for the years 1978, 1979, and 1980 is reversed. Property taxes paid by plaintiff to defendant for those years shall be refunded. No costs, a public question.