OAKWOOD HOSPITAL CORPORATION v. STATE TAX COMMISSION.

1. TAXATION—EXEMPTION OF PROPERTY—NONPROFIT GENERAL HOSPITAL.

Nonprofit general hospital's property used for hospital purposes is exempt from taxation under the general property tax law (CLS 1961, § 211.7).

2. SAME—EXEMPTION—RESIDENCES FOR PHYSICIANS AND INTERNS ON HOSPITAL PROPERTY.

Occupancy of 6 hospital-owned houses by resident physicians and interns and their families, located on same 33-acre tract as nonprofit hospital *held*, to be owned and occupied in furtherance of and for the purposes for which the hospital was incorporated, such occupancy being incidental to the use and operation of the entire property for hospital purposes (CLS 1961, § 211.7).

3. SAME—EXEMPTION—RESIDENCES FOR PHYSICIANS AND INTERNS ON HOSPITAL PROPERTY—RENT.

Payment of rental by resident physicians and interns occupying houses on hospital-owned property does not preclude such property being exempt from property taxation, where such use

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation § 633.
[2, 3] 51 Am Jur, Taxation § 638.
[4] 51 Am Jur, Taxation §§ 633, 638.
[5] 14 Am Jur, Costs § 91.

is incidental to operation of the nonprofit hospital also located on the 33-acre premises, built as necessary accessories to hospital to provide housing facilities in order to obtain the full-time services of such professionally trained persons, not to produce income, the average operating and maintenance expenses greatly exceeding rent (CLS 1961, § 211.7).

4. SAME—EXEMPTION—STRICT CONSTRUCTION OF STATUTES.

The rule that tax exemptions are to be strictly construed is generally applied but in determining application of the rule to specific property a court must not overlook the purposes for which nonprofit corporation owner was organized and see whether or not the property held by it was used incidental to such purpose (CLS 1961, § 211.7).

5. COSTS—PUBLIC QUESTION—TAX EXEMPTION OF HOSPITAL RESIDENCES.

No costs are allowed on appeal from order of State tax commission upholding assessment upon and taxation of property used by hospital in furnishing at less than cost residences for full-time resident physicians and interns, a public question being involved (CLS 1961, § 211.7).

ADAMS, J., dissenting.

Appeal from the Michigan State Tax Commission. Submitted October 8, 1964. (Calendar No. 23, Docket No. 50,709.) Decided February 2, 1965.

Appeal to the State Tax Commission by the Oakwood Hospital Corporation, a Michigan nonprofit corporation, from an assessment made by the City of Dearborn. Assessment affirmed. Plaintiff appeals. Reversed.

*McClintock, Fulton, Donovan & Waterman (Stanley H. Fulton,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *James R. Ramsey,* Acting Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendant commission.

*Ralph B. Guy, Jr.,* Corporation Counsel, and *Carl P. Garlow,* Assistant Corporation Counsel, for City of Dearborn.

Dethmers, J. Plaintiff is a nonprofit corporation which owns and operates a public hospital located in the city of Dearborn. It appeals from an order of defendant Michigan State tax commission which upheld a tax assessment placed by that city on that portion of plaintiff's real property on which 6 dwelling houses are located. The city's assessment had been confirmed by its board of review and plaintiff appealed therefrom to defendant commission.

Plaintiff was incorporated for the following purposes:

"(a)    *    *    *

"To establish, build, own, lease or otherwise acquire, maintain, equip, and operate a general hospital or hospitals in the State of Michigan; to furnish or make available therein such professional and other services as are necessary or desirable for the care of sick, afflicted, infirm or injured persons; and, incidental to the foregoing and in connection therewith, to engage in scientific research and educational or other activities which are related to and are designed to promote and improve the general health and welfare.

"(b) This corporation is organized and shall be operated exclusively for charitable, scientific and educational purposes as a nonprofit corporation. It is not its purpose to, and it shall not, engage in activities involving or designed for the pecuniary gain or profit of its members or any individual or other organization. No part of its net earnings shall inure to the benefit of any member, trustee, officer or individual. It shall not be the purpose of this corporation to, and it shall not, engage in carrying on propaganda or otherwise attempting to influence legislation."

Plaintiff's real estate consists of 33 acres on which its hospital facilities are located. The houses are near the hospital and have been and are used for dwelling purposes for the resident physicians and interns and their families employed full time by the hospital. From the salaries paid them the hospital has been deducting and retaining $100 per month as a charge for occupancy of a house. The houses were not built by plaintiff to produce income for the hospital, but solely in order to provide housing near the hospital for the resident physicians and interns whose services and availability to the hospital at all times and on short notice are essential to operation of the hospital and to its accreditation by regulatory authorities. The houses were built to be necessary accessories to the hospital. There has been an acute shortage in Dearborn, for a number of years, of housing for such purposes in the vicinity of the hospital. Some of them must live very near to it. The hospital found that furnishing housing for interns was necessary in order to obtain their services at all. The hospital furnishes utility services and maintenance for these houses at an average operating expense to it of about $150 per month. The charge made to the occupants only helps to defray, in part, the hospital's expense of operating and maintaining such housing for its employees. It employs several other resident physicians and interns, ranging from 14 to 28 in number, for whom it leases houses from the owners and then rents them to those other physicians and interns on the same terms and conditions as to the occupants of said 6 houses. Only 1 such rented house is in Dearborn, it having become necessary to go outside the city to acquire what was needed.

There is no dispute that plaintiff is the kind of an institution engaged in the kind of hospital opera-

tion which causes its property used for that purpose to be exempt from taxation. The only dispute relates to that portion of plaintiff's 33-acre hospital site on which the 6 houses are located. Plaintiff sets forth in its brief as its statement of the question involved in this appeal, the following:

"Is that portion of the real property of a Michigan nonprofit corporation, engaged in operating a public general hospital, which is occupied and used by it solely for the purpose of housing medical internes and resident physicians who are employed full-time by that hospital, including their families, exempt from taxation under the provisions of the Michigan general property tax act as amended?

"The Michigan State tax commission answered this question 'No'.

"Appellant contends that it should be answered 'Yes'."

The material provisions of section 7 of the Michigan general property tax act in question (PA 1893, No 206, as amended), CLS 1961, § 211.7 (Stat Ann 1961 Cum Supp § 7.7), are as follows:

"Sec. 7. The following property shall be exempt from taxation: * * *

"Fourth, Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions * * * incorporated under the laws of this State with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated. * * * Also real estate, with the buildings and other property thereon, owned and occupied by any nonprofit trust and used for hospital or public health purposes."

It is the contention of defendant commission and of the city of Dearborn that the 6 houses are not, within the terms and meaning of the quoted statutory exemption, occupied by plaintiff's lessees solely

for the purposes for which plaintiff was incorporated nor used for hospital or public health purposes. This plaintiff disputes.

Defendant seeks to distinguish the factual situation here from that in cases cited by plaintiff for its position, notably *Webb Academy* v. *City of Grand Rapids,* 209 Mich 523. In that case the building in question was used for school purposes. However, it was also occupied by 3 persons who were teachers in the school who, in addition, performed the janitorial services in the building, it being necessary for them to be there early in the morning to have the rooms heated and prepared for the students when the school opened. Defendant and the city stress that, in holding the property exempt as being owned by an educational institution and occupied for educational purposes in that case, this Court said (p 528):

"Exemption does not follow from the mere fact of ownership  *  *  *  but is based on and only applies to ownership combined with occupation for the purposes of its incorporation."

Defendant says the 6 houses here are not used for purposes for which plaintiff was incorporated, namely to operate a hospital, but instead are used only for residential purposes. They point to the fact that in *Webb* this Court, in upholding the exemption, quoted with approval from 21 LRA NS 171 (footnote under the case of *State, ex rel. Spillers,* v. *Johnston,* 214 Mo 656 [113 SW 1083]), the following:

"That the statutory exemption from taxation of property used exclusively for school or educational purposes is not destroyed by the fact that proprietors, teachers, or other persons connected with the school reside in the building, when such residence therein is merely incidental to the use of the building as a school."

They emphasize the above use of the word "incidental" in *Webb*, and insist that occupancy here of the houses by the doctors was not merely an incidental to their use for hospital purposes but was the exclusive use to which the houses were put. The city then mentions that in *Webb* the occupation by residents was in the school building proper, but would distinguish the instant case in that here the doctors are not living in the hospital building proper but in detached houses. It would seem to be stretching legal technicalities to the breaking point, not warranted by *Webb*, to make decision turn on whether the dwellings are a part of, attached to, or separate from the hospital building proper.

In our view, with interns and resident doctors hard to acquire and unwilling to come unless furnished housing by the hospital, and nearness of such dwellings being important to make such doctors and interns immediately available in the hospital upon hurried call or short notice, and other housing in the city near the hospital being practically unavailable for that purpose, it cannot be escaped that the houses are owned by plaintiff and occupied in furtherance of and for the purposes for which plaintiff was incorporated and for hospital and public health purposes. The entire hospital facility, including the main hospital building proper and the 6 houses used as these are, must be considered together in determining whether all of it, in combination and, as well, divisibly, serves a hospital purpose and is used therefor. We say the answer is yes, and this answer applies to the houses as well as to the main hospital building. As in *Webb*, the occupancy by the doctors and interns is incidental to the use of the entire property for hospital purposes and the operation thereof as such.

In *Gull Lake Bible Conference Association* v.
*Township of Ross,* 351 Mich 269, plaintiff was a
charitable organization which conducted a Bible
study camp.  It was incorporated to promote and
conduct gatherings for the study of the Bible.  On
its real estate, which it sought to have exempted from
taxation, was a tabernacle and a youth chapel which
were concededly exempt, and also a hotel building
used for housing the association's employees, a fellowship center, picnic area, boat docks, bathhouse,
bathing beach, playground, et cetera.  The association charged rent for parking facilities, trailer campsites, and cottages used by people attending the conference.  This Court held all the property exempt
from taxation.  In point here is the following quotation by this Court from the trial court's opinion in
that case:

" 'The remaining question to be decided, therefore,
is whether the property here involved is occupied
by the plaintiff solely for the purposes for which
it was incorporated.  Again we must refer to the
rule appearing in 34 ALR 634, at page 635, and set
forth in *Auditor General* v. *R. B. Smith Memorial
Hospital Association,* 293 Mich 36, 39, wherein it is
said:

" ' "In determining whether the property is being
devoted to charitable purposes within the meaning
of the statute, the rule that tax exemptions are to
be construed strictly is generally applied, with the
result that, in the absence of a specific charter or
statutory provision, no property owned by a charitable institution, but held as a source of income, can
escape taxation, although the fact that a charge is
made for benefits conferred, against those who are
able to pay, in no way detracts from the charitable
character of an organization."

" 'In applying this rule we must determine whether
the plaintiff holds the property in question as a
source of income.  It is true that the plaintiff re-

ceives income from the use which it makes of the property and the manner in which it occupies the property by reason of the charges which it makes to the persons attending the conference and using the facilities offered and provided by plaintiff. However, in determining the true purpose of the plaintiff for owning and maintaining the property we must not overlook, but rather be largely governed by the purposes set forth in its articles for its incorporation.

" 'On reference thereto we find that it is not only the purpose of the plaintiff to conduct gatherings for the study of the Bible, et cetera, but it is also its purpose to promote such gatherings. Looking at the situation in the light of this latter purpose, it may be logically concluded that in order to obtain satisfactory attendance to its conference, plaintiff found it advisable and necessary to provide those attending with living accommodations, recreational facilities and all of the other services offered by plaintiff and made possible through the use and occupancy of the land in question by plaintiff in the manner in which they do use and occupy such land. The charges made for such services and facilities approximate the cost thereof to plaintiff, and the income derived therefrom should and does not, in the opinion of this court, detract from the charitable character of the plaintiff organization.' "

The houses are used as part of the hospital operation and are incidental thereto. Exemption under the statute applies.

The order of defendant commission upholding the assessment upon and taxation of the property in dispute is set aside and reversed. No costs, a public question being involved.

KAVANAGH, C. J., and KELLY, BLACK, SMITH, and O'HARA, JJ., concurred with DETHMERS, J.

Adams, J. *(dissenting)*. This case involves a claim of statutory exemption from real property taxes, as set forth by Justice Dethmers in his opinion.

*St. Joseph's Church* v. *City of Detroit,* 189 Mich 408, 414, states:

"It is a cardinal rule that exemption statutes— unlike homestead statutes—should receive a strict construction. Cooley on Taxation (2d ed), p 205.
\* \* \*

"A grant of exemption is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption. See 37 Cyc pp 891, 892, and cases cited, including *East Saginaw Manfg. Co.* v. *City of East Saginaw,* 19 Mich 259 (2 Am Rep 82); *Attorney General* v. *Common Council of Detroit,* 113 Mich 388 (71 NW 632)."

"It is axiomatic that all property, unless specially exempted, shall bear its fair share of taxation.
\* \* \* Exemptions from taxation are not favored. As was said by the trial court:

" 'While, of course, it lies within the power of the legislature to create an exemption from such special assessment, any such grant must be thoroughly and definitely expressed. The general rule is that any exemption from any form of taxation will be strictly construed. In 37 Cyc p 892, it is said:

" ' "Such a privilege or immunity cannot be made out by inference or implication, but must be conferred in terms too clear and plain to be mistaken, and in fact admitting of no reasonable doubt, but where it exists it should be carefully scrutinized and not permitted to extend either in scope or duration beyond what the terms of the concession clearly require." ' " *Doane* v. *Pere Marquette R. Co.,* 247 Mich 542, 544, 545.

Keeping in mind these long-established principles, I am unable to agree that the appellant is entitled to an exemption. The critical facts are that the hospital was employing a total of 24 resident physicians and interns and providing housing for all 24. Housing for six was provided on the hospital premises. These houses are located outside a fence which surrounds the hospital grounds. They are private, ranch-type houses on the edge of property which fronts on a public street in a residential neighborhood. Children of families residing in these homes are attending public schools in the city of Dearborn. They and their parents enjoy all community services and facilities.

The other 18 resident physicians and interns employed by the hospital are furnished housing facilities which have been rented for this purpose. The terms and conditions are the same as for the six houses in question. So far as appears upon this record, the doctors or interns occupying the 18 houses off the hospital premises have the same duties and responsibilities as those who occupy the six that are on the premises. The dwellings are allocated on a first-come-first-served basis.

The houses, whether on the hospital premises or off, are not used and occupied by the appellant any more than it could be said that the appellant uses and occupies the private housing of its janitors, pharmacists, nurses, dietitians, or other employees. It is not within the purview of the corporate purposes of the hospital to be in the housing business.

This emphasis upon "occupancy," "use," and "purposes" has its origin in the statute within which the plaintiff seeks to establish an exemption. In relevant part, it reads:

"The following property shall be exempt from taxation: * * *

"Fourth, Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions * * * incorporated under the laws of this State with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated. * * * Also real estate, with the buildings and other property thereon, owned and occupied by any nonprofit trust and used for hospital or public health purposes." CLS 1961, § 211.7, as amended by PA 1963, No 148 (Stat Ann 1963 Cum Supp § 7.7).

As stated at the outset, it is essential that the plaintiff establish beyond a reasonable doubt the ability of the property here involved to come within the terms of the statute. There is, to say the least, substantial doubt as to the occupancy, use and purpose, to which these homes are being put. Prior case law does little to remove that doubt.

*Webb Academy* v. *City of Grand Rapids*, 209 Mich 523, is clearly distinguishable from the present case. In *Webb* there was an incidental use of the school building as a residence, enabling the occupants to carry out school purposes and activities.

" 'The school grounds and school building, all of the recitation rooms are kept in order by Mr. and Mrs. Webb; they are there in the early morning to have the rooms heated and prepared for its students when the school shall open; they do some of their instructing of pupils in the evening; they are there for that purpose; they are there during vacation times for the purpose of keeping and putting said building in condition for the opening of this academy at its next term.' " p 533.

Likewise, in *Gull Lake Bible Conference Association* v. *Township of Ross*, 351 Mich 269, 275:

"The purpose of the plaintiff [was] to conduct gatherings for the study of the Bible, et cetera, but

it is also its purpose to promote such gatherings. Looking at the situation in the light of this latter purpose, it may be logically concluded that in order to obtain satisfactory attendance to its conference, plaintiff found it advisable and necessary to provide those attending with living accommodations, recreational facilities and all of the other services offered by plaintiff and made possible through the use and occupancy of the land in question by plaintiff in the manner in which they do use and occupy such land."

I agree with Justice DETHMERS that whether the housing is physically attached to the hospital is unimportant. What is important is that the property is neither occupied by the hospital "solely for the purposes for which they [it] were [was] incorporated" nor is it used for "hospital or public health purposes."

No costs, question of statutory construction being involved.

SOURIS, J., did not sit.